UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| QUETA'S INVESTMENTS, INC., *et al* | § § § | |
| v. | § § | CIVIL ACTION NO. M-04-272 |
| CITY OF HIDALGO, *et al* | § § § § | |

## ORDER GRANTING SUMMARY JUDGMENT

### I. Background

Before this Court is Defendants' Motion for Summary Judgment (Doc. 32). Plaintiffs Queta's Investments ( "Queta's") and Jesse Gonzalez-Laurent (hereinafter "Gonzalez-Laurent") claim that Defendants City of Hidalgo ("City"), Virgil Gonzalez ("Gonzalez"), Seargant Hernandez ("Hernandez") and Homero Garza ("Garza") individually and collectively violated their Fourth, Fifth and Fourteenth Amendments as applied through 42 U.S.C. 1983. (Doc. 31). Specifically, Queta's claims that Defendants' application of a municipal landscaping ordinance constituted a wrongful taking and inverse condemnation of its property. (Doc. 31). Gonzalez-Laurent, an employee of Queta's, claims that Gonzalez and Hernandez used excessive force in his arrest in connection with an alleged violation of the ordinance. (Doc. 31).

Defendants move for summary judgment on the grounds that Gonzalez and Hernandez are entitled to qualified immunity, that the City is entitled to official immunity, and that Queta's takings and inverse condemnation claims are not ripe. In the alternative, Defendants argue that the landscape ordinance is not unconstitutional and Queta's did not suffer a taking. (Doc. 32).

### II. Analysis

**A.** **Summary Judgment Standard**

A district court will grant summary judgment when there is no genuine dispute as to any

material fact and the moving party is entitled to summary judgment as a matter of law. Fed. R. Civ. Pro. 56 (2005). Summary judgment is proper "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party moving for summary judgment has "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The movant may meet this initial burden by submitting evidence that negates the existence of an element of the non-movant's claim or by showing that there is an absence of evidence to support the plaintiff's claim. *Id.* at 323-325.

The burden then shifts to the non-movant to "produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Frank v. Xerox Corp*, 347 F.3d 130, 135 (5th Cir. 2003)(internal citations omitted). Such evidence must establish the existence of a genuine issue and be sufficient to prevent a directed verdict against the non-movant at trial. *Celotex Corp*, 477 U.S. at 321. While doubts and reasonable inferences regarding the facts are resolved in favor of the non-moving party, the party's conclusory allegations, which are not supported by concrete and specific facts, will not defeat summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986).

B. **Qualified Immunity**

Gonzalez and Hernandez asserted the affirmative defense of qualified immunity in their Motion to Dismiss and the present Motion for Summary Judgment. (Doc. 25 and Doc. 32). The Court will consider the qualified immunity arguments in response to both motions. (Doc. 25 and Doc. 32). Once an officer "asserts his entitlement to qualified immunity in a motion for summary judgment, the plaintiff bears the burden of coming forward with sufficient summary judgment evidence to sustain a determination that the officer's actions violated clearly established federal law." *Holland v. City of Houston*, 41 F.Supp.678, 696 (S.D. Tex. 1999)(internal citations omitted). In order to show that an officer violated established federal

law, the plaintiff must prove that the officer knew or reasonably should have known that the actions he was taking within the scope of his official responsibility would violate the defendant's constitutional rights. *Id.* at 696-697(internal citations omitted).

In this case, Gonzalez-Laurent did not plead that Gonzalez was involved in his arrest. (Doc. 31). He further did not specify what actions, if any, Gonzalez took during the arrest. (Doc. 31). More importantly, Gonzalez-Laurent did not allege that Gonzalez knew or should have known that his actions violated Gonzalez-Laurent's constitutional rights. (Doc. 31).

Moreover, Defendants presented summary judgment evidence establishing that Gonzalez's actions did not violate any clearly established federal law. (Doc. 32). Gonzalez was employed as a code enforcer for the City of Hidalgo. (Doc. 32, Exhibit A). He was not a police officer or affiliated with any other type of law enforcement. (Doc. 32, Exhibit A). Gonzalez approached Gonzalez-Laurent to inquire whether he had a permit for his activities. (Doc. 32, Exhibit A). When Gonzalez told Gonzalez-Laurent that a permit appeared to be required, Gonzalez-Laurent responded with verbal hostility. (Doc. 32, Exhibit A). Consequently, Gonzalez left the property and called the police department. (Doc. 32, Exhibit A).

In response to the motion for summary judgment, Gonzalez-Laurent provided no evidence to controvert Defendants' evidence supporting Gonzalez's claim of qualified immunity. (Doc. 38). He further failed to specify what actions Gonzalez knowingly or negligently took in violation of any constitutional right. (Doc. 38). The facts of this case show that Gonzalez's actions did not violate any constitutional rights. As a code enforcement officer, Gonzalez was responsible for enforcing the building codes for the City, including the landscaping ordinance in question. (Doc. 32, Exhibit A). Gonzalez's actions with regard to Gonzalez-Laurent included observation of the construction activity, inquiry as to whether Gonzalez-Laurent had a permit, instruction to stop construction because there was no permit, and a call to the police department after Gonzalez-Laurent refused to stop. (Doc. 32, Exhibit A). None of these actions can be construed as a violation of Gonzalez-Laurent's constitutional rights. Accordingly, the Court concludes that Gonzalez is entitled to qualified immunity.

With regard to Hernandez, Gonzalez-Laurent likewise failed to specify which actions he knew or should have known would violate Gonzalez-Laurent's constitutional rights. (Doc. 31). Hernandez is an officer of the Hidalgo Police Department. (Doc. 32, Exhibit B). Defendants' competent summary judgment evidence establishes that Hernandez responded to Gonzalez's

call, questioned Gonzalez-Laurent about his permit, and waited for Garza's arrival. (Doc. 32, Exhibit B). As with Gonzalez, Gonzalez-Laurent failed to provide any controverting evidence in response to Hernandez's claim of qualified immunity. He contends that Hernandez entered onto property without a warrant, harassed Gonzalez-Laurent and stopped work. (Doc. 38). However, Hernandez's actions did not violate any constitutional right. The facts show that Hernandez responded to Gonzalez's call about Gonzalez-Laurent's construction without a permit. (Doc. 32, Exhibit C). Hernandez testified that Gonzalez-Laurent refused to stop his construction activity as ordered by Sargent Garza and refused to identify himself. (Doc. 32, Exhibit C). However, it is undisputed that Hernandez did not perform the actual arrest; he merely observed. (Doc. 32, Exhibit C). Thus, Gonzalez-Laurent failed to provide any evidence that Hernandez's actions violated his constitutional rights. Consequently, the Court concludes that Hernandez is entitled to qualified immunity.

For the reasons stated above, the Court **GRANTS** Defendants' motion for summary judgment as to the qualified immunity defenses for Defendants Gonzalez and Hernandez.

**C. Official Immunity**

To impose liability on a government entity through 42 U.S.C. 1983, a plaintiff must establish that he sustained a deprivation of a constitutional or other federally protected right as a result of some official policy, practice or custom of said governmental entity. *Monell v. Dept. of Social Services*, 436 U.S. 658, 690, 98 S.Ct. 2018, 2035-36, 56 L.Ed.2d 611 (1978). In other words, municipal liability under Section 1983 "requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Pitotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). A policy maker is one whose acts "may fairly be said to represent official policy." *Swann v. City of Dallas*, 922 F.Supp. 1184, 1204 (N.D. Tex. 1996) (internal citations omitted). An ordinance, regulation or decision adopted and promulgated by the municipality's lawmaking officers is an "official policy". *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir.) (per curiam), *aff'd in relevant part on rehearing*, 739 F.2d 993 (5th Cir. 1984) (en banc).

Gonzalez-Laurent alleges that the City of Hidalgo engaged in an official policy or practice of upgrading the "appearance of the environs" by requiring major expenditures for new

construction and landscaping as enforced through the landscaping ordinance in question. (Doc. 31). This official policy, he claims, is effectuated through mandatory remodeling permits and constitutes inverse condemnation and eminent domain. (Doc. 31). Apart from the takings claim discussed below, Plaintiff does not allege that any specific constitutional right was violated as a result of the landscaping ordinance. (Doc. 31, 38). It has long been insisted that the review of municipal regulations lies "within the domain of the states, the business of their own legislatures, agencies, and judiciaries, and should seldom be the concern of the federal courts." *Shelton v. City of College Station*, 780 F.2d 475, 477 (5th Cir.)(en banc), certs. denied, 477 U.S. 905, 106 S.Ct. 3276, 91 L.Ed.2d 566 and 479 U.S. 822, 107 S.Ct. 89, 93 L.Ed.2d 41 (1986). However, municipal ordinances do not violate substantive due process if "any conceivable rational basis" exists for their enforcement. *F.M. Properties Operating Company v. City of Austin*, 93 F.3d 167, 174 (5th Cir. 1996) (internal citations omitted). Thus, the regulation comports with due process if it is rationally related to a legitimate government interest. *Id*.(internal citations omitted).

Ordinances regulating the use of property are presumed valid and should be upheld unless their impact on the land usage denies the owner the "justice and fairness" guaranteed by the Constitution. *Schafer v. City of New Orleans*, 743 F.2d 1086, 1089-1090 (5th Cir. 1984). Generally, the regulation of construction, maintenance, and repair of buildings through ordinances regulating the issuance permits fall within the scope of a municipality's police power. *Town of Renner v. Wiley*, 458 S.W.2d 516, 521 (Tex.Civ.App.--Dallas 1970 no writ). The municipality issuing permits has the power to impose restrictions in interest of public health, morals, safety, or welfare. *Trevino & Gonzales Co. v. R.F. Muller Co*., 949 S.W.2d 39, 42 (Tex.App.--San Antonio 1997, no writ). Moreover, the ordinance regulating permits and construction is not oppressive merely because it imposes greater costs to conform to its requirements. *Gordon v. State*, 757 S.W.2d 496, 500 (Tex.App.--Houston [1st Dist] 1988, writ denied).

Therefore, the only question before the Court regarding a violation for which the City may be liable under Section 1983 is whether a rational basis exists between the policy and a *conceivable* legitimate governmental objective. *F.M. Properties*, 93 F.3d at 174-175 (internal citations omitted) (emphasis original). If the existence of a rational basis is even debatable, then there is no substantive due process violation. *Id*. Furthermore, the Supreme Court has stated

that public welfare, which is a legitimate government interest protected by the municipal police power, is broad and inclusive. *Village of Belle Terre v. Boraas*, 416 U.S. 1, 6, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974)(internal citations omitted). As such, "it is within the power of the legislature to determine that the community should be beautiful as well as healthy, spacious as well as clean, well-balanced as well as carefully patrolled." *Id*. The ordinance in question may reasonably be intended to promote the public welfare through the beautification of property. (Doc. 32, Exhibit A). Consequently, a rational basis exists between the landscaping ordinance and the legitimate government interest of promoting the public welfare.

In this case, Gonzalez-Laurent has not come forth with some evidence alleging that a policy maker enforced the landscaping ordinance that resulted in a violation of any constitutional right. The landscaping ordinance rationally relates to the legitimate government interest of beautification, and thus comports with substantive due process. (Doc. 32, Exhibit A). Therefore, no violation of a constitutional right or right otherwise protected by federal law has been alleged or proven. Furthermore, Gonzalez-Laurent has not come forth with evidence showing how enforcement of the landscaping ordinance would violate such right. (Doc. 31, 38). Thus, Gonzalez-Laurent has not met his burden of proof to impose liability on the City under Section 1983 as a result of a constitutional violation. Accordingly, the Court concludes that Gonzalez-Laurent's Section 1983 claim against the City fails as a matter of law.

**D. Queta's Takings Claim**

Plaintiff Queta's claims that it suffered property damage as a result of the City's new beautification ordinances which require major expenditures for new construction and landscaping and apply to construction projects subject to remodeling permits. (Doc. 31). Specifically, Queta's alleges that through the landscaping ordinance, the City forces property owners to make extensive and costly renovations that are unnecessary to further a legitimate government interest. Thus, the City allegedly engages in inverse condemnation, eminent domain, and "taking of property on the sly". (Doc. 31). Queta's alleges that the Defendants' individual and collective enforcement of the ordinance violated its rights guaranteed by the Fourth, Fifth and Fourteenth Amendments and Article 1, Section 19 of the Texas Constitution

by taking property without due process or just compensation.[1]  (Doc. 31).

The Fifth Amendment proscribes two types of compensable takings.  *Hallco Texas, Inc. v. McMullen County, Texas*, 934 F.Supp. 238, 240 (S.D. Tex. 1996).  The first is when the government physically occupies or appropriates private property.  *Id*. citing *Loretto v. Teleprompter Manhattan CATV Corp*., 458 U.S. 419, 426, 102 S.Ct. 3164, 3171, 73 L.Ed.2d 868 (1982).  The second is when a government regulation denied the owner all economically beneficial or productive use of his land.  *Id*. citing *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1015-1018, 112 S.Ct. 2886, 2893-2894, 120 L.Ed.2d 798 (1992).  A variant of the second type of taking is when the government regulation goes "too far" compared with the public interest it is designed to promote.[2]  *Id*.(internal citations omitted).  Because Queta's claims that it was unable to repair its building as a result of a permit scheme enforced by Defendants, it is clear that Queta's alleges wrongful taking of the second type.  (Doc. 31); *Hallco Texas, Inc.,* 934 F.Supp. at 240.  Defendants addressed Plaintiff's takings claim in its motion for summary judgment.  (Doc. 32).  Relying upon *Williamson County Regional Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 194, 105 S.Ct. 3108, 3120, 87 L.Ed.2d 126 (1985), Defendants

---

[1] Plaintiff does not differentiate between his Fourth and Fifth Amendment claims as applied through the Fourteenth Amendment. (Doc. Response). The principles embodied in the Takings Clause of the Fifth Amendment have been incorporated into the Fourteenth Amendment and applied to the states, *see Samaad*, 940 F.2d at 933; *Chicago B. & Q.R.R. v. Chicago*, 166 U.S. 226, 17 S.Ct. 581, 41 L.Ed. 979 (1897), and the Fourth Amendment protects individuals against unreasonable seizures of property. *John Corporation*, 214 F.3d at 577. Plaintiff's failure to distinguish the Amendments does not affect the relevant takings analysis, however. The Fifth Circuit held that "a distinction between the use of police powers and of eminent domain power . . . cannot carry the day" because the Supreme Court's entire "regulatory takings" law is premised on the notion that a city's exercise of its police powers can go too far, and if it does, there has been a taking. *John Corporation*, 214 F.3d at 577; citing *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415, 43 S.Ct.. 158, 67 L.Ed. 322 (1922); *Lucas*.

Furthermore, to the extent Queta's claims a violation of due process, it does not specify whether Defendants' actions violated its procedural or substantive due process rights guaranteed by the Fourteenth Amendment. (Doc. 31). Defendants did not submit briefing regarding any due process claims. (Doc. 32, reply). Because Plaintiff's substantive due process claims may not be subsumed by its takings claim, they may not fall under the Williamson County two-pronged test for ripeness. *See John Corporation v. City of Houston*, 214 F.3d 573, 584 (5th Cir. 2000) (finding that due process claims are not subsumed by the Taking Clause and that the finality prong of the Williamson County analysis does not necessarily apply to due process claims brought concomitantly with a takings claim where finality of the municipality's decision is not at issue). Accordingly, the Court will not address Queta's substantive due process claims at this time.

However, Queta's possible procedural due process claim is not ripe until its takings claim is ripe because a court may only assess whether sufficient procedure was afforded a plaintiff when a takings claim has been established. *John Corporation*, 214 F.3d at 585. Therefore, Queta's procedural due process claim, if any, will not be ripe for determination under the general rule that claims are not ripe if additional factual development is necessary. *Id.* at 586.

[2] This case is similar to *Hallco* in that it involves a taking of the second type because Plaintiff's claim involves neither government occupancy nor deprivation of use of the land. 934 F.Supp. at 240.

contend that Queta's takings claim is not ripe for this Court's determination. (Doc. 32).

In *Williamson County*, the Supreme Court determined that a takings claim is not ripe for determination until the claimant has unsuccessfully sought compensation from the state. 473 U.S. at 194, 105 S.Ct. at 3120. The Court reasoned that "because the Fifth Amendment proscribes takings without just compensation, no constitutional violation occurs until just compensation has been denied. The nature of the constitutional right therefore requires that a property owner utilize procedures for obtaining compensation before bringing a 1983 action." *Id.* at 194, n. 13, 105 S.Ct. at 3120 n. 13. While acknowledging that Section 1983 does not specifically require plaintiff to exhaust his remedies, the Court explained that "if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and has been denied just compensation." *Id*. at 195, 105 S.Ct. at 3121.

When applying *Williamson County* to takings claims, the Fifth Circuit utilizes a two-pronged ripeness test. *Hidden Oaks v. City of Austin*, 138 F.3d 1036, 1041 (5th Cir. 1998). A takings claim is not ripe until (1) the plaintiff proves that the relevant governmental entity has reached a final decision as to the property's disposition and (2) the plaintiff seeks compensation for the alleged taking through whatever adequate procedures the state provides.³ *Id*; *see also John Corporation v. City of Houston*, 214 F.3d 573. Moreover, because ripeness turns on the adequacy of Texas's procedures, it is a jurisdictional requirement that cannot be waived. *Samaad v. City of Dallas*, 940 F.2d at 934 (5th Cir. 1991)(internal citation omitted). Therefore, a violation of the Takings Clause does not occur until just compensation has been denied, and a plaintiff must use available state procedures to seek such compensation before it may bring a Section 1983 claim to federal court. *John Corporation,* 214 F.3d at 581; *Rolf v. City of San Antonio*, 77 F.3d 823, 827 (5th Cir. 1996); *Samaad v. City of Dallas,*, 940 F.2d 925, 936 (5th Cir. 1991); *Hidden Oaks*, 138 F.3d 1036; *Trail Enterprises, Inc. v. City of Houston*, 907 F.Supp.250, 251 (S.D. Tex. 1995); *Hallco Texas, Inc.,* 934 F.Supp. at 240; *Maguire Oil Company v. City of*

---

³Generally, if a plaintiff asserted a right to just compensation for the government's taking of its property, and if a plaintiff has an available means of pursuing just compensation from the state, then *Williamson County* requires that the state-provided procedures first be used. *See Samaad*, 940 F.2d at 933. The Fifth Circuit has recognized only one exception to this rule: claims that the government took property for private purposes do not have to be first submitted to the state procedures. *John Corporation,* 214 F.3d at 580 *citing Samaaad*, 940 F.2d at 936. Plaintiff has not plead a specific allegation of government taking for private use. (Doc. 31).

*Houston*, 143 F.3d 205, 207 (S.D.Tex. 1998).

With respect to the first prong of the ripeness test, Queta's has not submitted any evidence that the City or any other governmental entity has entered a final decision regarding the property in question.[4] Queta's cannot rely only on the fact the ordinance in question does not provide an immediate means of appeal. (Doc. 38); *Hallco Texas, Inc*. 934 F.Supp. at 240 (dismissing plaintiff's argument that the ordinance in question constituted a final decision because it did not provide any means for obtaining variances from its provisions). Queta's must establish that the disposition of its property by means of the ordinance is final. Because Queta's has not offered evidence establishing the final status of its permit application with the City, that any appeal has been filed, or that the City has reached a final determination with respect to the warehouse property, the Court concludes that Queta's has failed to meet his burden of showing with some evidence that a final decision has been made. (Doc. 38); *see also Hallco Texas, Inc*., 934 F.Supp. at 239.

In addition to providing proof of a final decision, a plaintiff must use available state procedures before bringing a takings claim to federal court. *John Corporation*, 214 F.3d at 581. Procedures are inadequate procedures only when they *almost certainly* will not justly compensate the claimant. *Samaad*, 940 F.2d at 934 (emphasis original). Unsettled state law does not render available procedures inadequate. *Id*; *Rolf*, 77 F.3d at 827. Thus, short of unsuccessfully seeking compensation, it must be certain that the state would deny compensation were the plaintiff to undertake the obviously futile act of seeking it. *Samaad*, 940 F.2d at 934.

In this case, state procedures for seeking compensation are available to Queta's, yet it has not plead or submitted any evidence of any action taken. *John Corporation,* 214 F.3d at 581 citing *Maher v. Lasater*, 163 Tex. 356, 354 S.W.2d 923 (1962); *City of Houston v. Crabb*, 905 S.W.2d 669, 674 (Tex. App.—Houston [1st Dist] 1995, no writ); *see also Westgate, Ltd. v. State of Texas*, 843 S.W.2d 448 (Tex. 1992); *Guetersloh v. State of Texas*, 930 S.W.2d 284, 289-90

---

[4] Plaintiff's live pleading and response to the instant motion do not specify what property is subject to its takings claim. (Doc. 31 and 38). The live pleading focuses predominantly on the warehouse property. (Doc. 31). However, significant portions of the evidence in support of Plaintiff's Response to Defendants' Motion for Summary Judgment refer to a separate rental unit that was burned in a fire. (Doc. 38). Moreover, the record is not clear regarding the status of the permit process in which Plaintiff may have engaged for each building. (Doc. 38). Regardless, the lack of factual clarity does not affect the Court's ultimate determination that any takings claim is not ripe.

(Tex.App.—Austin 1996, writ denied), *cert. denied*, 522 U.S.1110, 118 S.Ct. 1040, 140 L.Ed.2d 106 (1998) (outlining a specific reservation procedure for plaintiffs forced to prosecute takings claims in state court). Queta's admits that it has not sought compensation through any other means for the alleged taking. (Doc. 38). Accordingly, the Court finds that Queta's has failed to come forth with any evidence that it has unsuccessfully sought compensation from state procedures.

Thus, the Court finds that Queta's has failed to establish that its takings claim is ripe for determination. Consequently, this Court does not have jurisdiction to hear Queta's takings claim. Therefore, the Court **GRANTS** Defendants' Motion for Summary Judgment with respect to Queta's takings claim under the 5th and 14th Amendments and **DISMISSES** the claim **WITHOUT PREJUDICE**.

Because the Court does not have jurisdiction over the takings claim, it cannot exercise jurisdiction over Queta's claim under the Texas Constitution. *Samaad*, 940 F.2d at 934-935 (finding that a federal district court cannot exercise jurisdiction over a state law claim that is pendent to a claim over which the federal courts would have no jurisdiction). Accordingly, the Court will not consider Queta's inverse condemnation claim brought under Article 1, Section 19 of the Texas Constitution.

### III. Conclusion

Based on the foregoing reasons, the Court finds that Defendants Gonzales and Hernandez established the affirmative defense of qualified immunity with regard to Gonzalez-Laurent's claims. The Court **GRANTS** Defendants' motion for summary judgment in that regard. Furthermore, the Court concludes that Gonzalez-Laurent failed to allege a violation of a constitutional right for which the City may be liable under Section 1983. Finally, the Court concludes that Queta's takings claim is not ripe because it has not unsuccessfully sought compensation from state procedures. Accordingly, the Court **GRANTS** Defendants' motion for summary judgment as to Queta's Fifth Amendment takings claim and **DISMISSES** the takings claim **WITHOUT PREJUDICE**. Because the Court does not have jurisdiction over the takings claim, it will not consider Queta's inverse condemnation claim under the Article 1, Section 19 of the Texas Constitution. Therefore, the Court **GRANTS** Defendants' Motion for Summary

Judgment with regard to the individual Defendants' qualified immunity defenses.  The Court concludes that Gonzalez-Laurent failed to state a claim imposing liability on the City under Section 1983.  Finally, the Court **DISMISSES** Queta's takings claim **WITHOUT PREJUDICE**.

    SO ORDERED this 30th day of September, 2005, at McAllen, Texas.

_____
Randy Crane
United States District Judge